# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT HOWARD, | : | CIVIL NO. 3:13-CV-1098 |
| Petitioner, | : | (Judge Mariani) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MONICA RECTENWALD, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I.     Introduction

This habeas corpus petition invites the court to address a series of legal questions regarding the application of the Second Chance Act, a 2008 federal statute designed to provide prison officials with greater discretion in assisting inmates in making the transition back into society by permitting prison officials to place inmates in Residential Re-entry Centers (RRC) up to 12 months before they are released from custody.  Although Howard invites us to reach and resolve all of these issues, he extends this invitation to us without awaiting a final decision by the Bureau of Prisons on his Residential Re-entry placement.  Thus, in the first instance Howard's petition raises questions regarding when a dispute regarding a proposed RRC placement decision becomes ripe and subject to resolution by the court.

1

Beyond the threshold jurisdictional question of ripeness, this petition also invites us to determine whether, and to what extent, the Second Chance Act gives federal inmates a substantive right to early release to a halfway house or other non-custodial setting as they near the conclusion of their prison terms. With respect to this question, we find, consistent with the vast majority of courts, that the Act does not create a specifically enforceable right to release at any particular time. Rather, it provides guidance to prison officials in the exercise of their longstanding statutory discretion concerning inmate placements, guidance that permits, but does not compel, earlier release to a residential setting for inmates. Accordingly, what the law requires is for prison staff to give each inmate individualized consideration for earlier residential release, but leaves that individualized assessment largely in the discretion of corrections staff.

With respect to these two questions, in this case it is recommended that the court first decline Howard's invitation to address these constitutional issues since this petition is premature and it is well-settled that a federal inmate who wishes to bring a habeas corpus petition based upon an alleged failure by prison staff to comply with the Second Chance Act must first await a final agency RRC placement decision. In any event, to the extent that this dispute is now ripe, we find that the requirements of the Act have been fully met here where the evidence shows that the petitioner is

receiving an individualized assessment of his suitability of placement in a Residential Re-entry Center. Therefore, if the court concludes that this dispute is now ripe, it is recommended that the petition be denied on the merits.

II. **Statement of Facts and of the Case**

A. **Robert Howard**

Robert Howard is a federal inmate who was sentenced on December 14, 2007, in the United States District Court for the Middle District of Pennsylvania to a 115-month term of imprisonment for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 6, Declaration of George Chamberlin Ex. 1 ¶ 3; see also Ex. 2 United States v. Howard, Doc. 85, Crim. A. No. 1:06-cr-138 (M.D. Pa. Dec. 14, 2007) (judgment and conviction)). Howard has been incarcerated at the Federal Correctional Institution in Allenwood, Pennsylvania since October 26, 2009, (Id.,Ex. 1 ¶ 3), and his projected release date is August 27, 2014. (Id.)

B. **The Second Chance Act and BOP Implementing Guidance**

In April of 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, went into effect. This act contains several provisions which are designed to aid prisoners in their transition back into society. For example, the Act authorizes the Bureau of Prisons to place certain inmates in RRCs for as much as one year at the end of their prison terms to aid them in their readjustment into society. See 18 U.S.C. §

3624(c)(1).[1] The Bureau of Prisons has adopted a series of policies, practices and procedures which govern inmate placement and custody. These policies, in part, speak to the issue of RRC placements of inmates in the year prior to their release dates and direct that, as a result of the Second Chance Act: (1) RRC placements were increased to a maximum of twelve months; (2) RRC placement determinations are to be made

---

[1] 18 U.S.C. § 3624(c) provides as follows:

**( c ) Prerelease custody.**–

**(1) In general.**--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

**(2) Home confinement authority.**--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

**(3) Assistance.**--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

**(4) No limitations.**--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621

18 U.S.C. § 3624 (c).

on an individualized basis using the criteria set forth at 18 U.S.C. §3621(b); and (3) sentencing court orders, recommendations or requests directing an inmate's placement in an RRC should be considered, but are not binding on the Bureau of Prisons. Delacruz v. Bledsoe, No. 10-139, 2010 WL 1791241, at *2 (M.D.Pa. March 3, 2010)(reciting pertinent Bureau of Prisons' policy statements).

The Bureau of Prisons policies also instructed prison staff that, in addition to implementing regulations,[2] the BOP has issued guidance to its employees on how to properly implement the mandates of §§ 3621 and 3624. (Id., Ex. 1 ¶ 16; Attach. 1 (Apr. 14, 2008 Guidance Memorandum); Attach. 6 (June 24, 2010 Guidance Memorandum); Attach. 2 (Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedures).) This policy guidance reminded BOP staff that "all" inmates are statutorily eligible for up to 12 months pre-release RRC placement; that not all inmates are appropriate for RRC placement; and that where RRC is appropriate, the length of the placement must be determined on an individualized basis in accordance with the requirements of §§ 3621 and 3624. (Id., Attach. 6, at 1-2.) In addition, the inmate's institutional programming is reviewed,

---

[2]See 28 C.F.R. § 570.22 (implementing the statutes: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.").

separately and apart from § 3624, to determine whether additional RRC time is warranted as an incentive under 42 U.S.C. § 17541. (Id., Ex. 1 ¶ 7.)

Recommendations for RRC placements are ordinarily reviewed with the inmate and the Unit Team seventeen to nineteen months before each inmate's probable release date. (Id., ¶ 4; Attach. 1, at 3.) The Warden of the institution has final authority on whether to refer the inmate to the Community Corrections Manager (CCM). (Id., Attach. 2, at 12 (Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedures).) If the Warden approves the RRC referral, the Unit Team forwards a completed referral packet for community corrections placement, a process that typically should be completed approximately two months prior to the inmate's maximum recommended range or date. (Id., Ex. 1 ¶ 5; Attach. 2, at 12-13.) Each recommendation and referral is conducted with the understanding that the inmate is entitled to a potential maximum RRC placement of twelve months, and with an analysis consistent with the applicable statutes, regulations, and agency guidance. See, e.g., 28 C.F.R §570.21-570.22.

      **C.**     **The Status of Howard's RRC Placement Request**

In this case, at the time of the filing of this petition, a final decision had not been made on Howard's RRC placement. Rather, on September 18, 2012, the prison Unit Team met and initially reviewed Howard for RRC placement. (Id., Ex. 1 & 8; Attach.

3.) At this initial discussion it was noted that Howard's case presented conflicting factual considerations relating to the most appropriate time for an residential reentry placement for this inmate.

At the outset, Howard's criminal history suggested a need for a structured environment for this offender. Specifically, it was noted that Howard had a history of violence, including terroristic threats, and had stabbed a victim in the head. (Id., Ex. 1 and 9, Attach. 3.) In addition, Howard's Pre-Sentence Report revealed that Howard had a lengthy history of substance abuse and had amassed 32 criminal convictions between May 29, 1980 and April 5, 2006. (Id., Ex. 1 ¶ 9.) At least four of these convictions involved crimes of violence. (Id.) In contrast, while in prison Howard had adjusted well, and had taken several programming classes and maintained a positive term of incarceration. (Id., Attach. 4, at 2.) Balancing the negative and positive aspects of Howard's criminal past and institutional adjustment, prison officials advised Howard during his review that he would more than likely be recommended for 150-180 days of RRC placement. (Id., Ex. 1 and 10.) However, presently it is reported that a final recommendation for RRC placement has not yet been submitted.

### D. Howard's Habeas Petition

Howard filed the instant petition on April 25, 2013, in the United States District Court for the Middle District of Pennsylvania. (Doc. 1.) In this petition Howard challenges what he anticipates will be the Bureau of Prisons' implementation of the Second Chance Act provisions relating to the placement of inmates into community corrections centers, and the BOP's method of determining his eligibility for a community confinement facility in his case. (Id.) According to Howard, the suggested 150-180 day placement in an RRC is not long enough to ensure his successful transition back into the community. (Id.)

The respondents have responded to this petition by noting that Howard has not yet been placed in this program, and argue that his petition is, therefore, premature and procedurally inappropriate. These issues have been fully briefed by the parties (Docs. 1, 6, and 8.) and are now ripe for disposition. For the reasons set forth below, it is recommended that the court dismiss this petition.

### III. Discussion

#### A. Howard's Petition Is Not Yet Ripe

At the outset, in this case Howard's habeas corpus petition is procedurally flawed. Specifically, Howard's claims are not yet ripe for adjudication since the Bureau of Prisons has not yet made an RRC placement decision in his case. The

ability of the courts to address a petitioner's concerns is entirely dependent upon the existence of some genuine, currently justiciable case or controversy between the parties to litigation. Thus, a ripe dispute is an essential prerequisite to any exercise of judicial authority. As this court has observed:

> "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Standing provides "justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Supreme Court has described three elements that comprise the "irreducable constitutional minimum of standing." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff must first "have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized [citations omitted] and (b) 'actual or imminent, not 'conjectural or hypothetical.' " Id. (quoting Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Next, the injury suffered by the plaintiff must by causally connected to the conduct of which the plaintiff complains: "the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.' " Id. (quoting Simon, 426 U.S. at 41-42). Finally, "it must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " Id.

Griffin v. Holt, No. 08-1028, 2008 WL 5348138, at *2 (M.D.Pa. Dec. 17, 2008).

In the context of inmate federal habeas corpus petitions, like the petition filed by Howard, which challenge RRC program placement decisions, the basic requisites

9

which define a ripe, justiciable dispute can be readily defined: Such a petition is not ripe until a final RRC placement decision is made. Therefore, where, as here, a prisoner seeks judicial intervention in the RRC placement process before a final placement decision has been made, this habeas petition must be dismissed since the petition is premature and does not present a justiciable case or controversy. See, e.g., Stanko v. Ebbert, No. 09-2180, 2010 WL 1805387 (M.D. Pa. May 5, 2010)(McClure, J.); Calloway v Warden, No. 08-544, 2009 WL 1925225 (D.Ore. July 1, 009); Sass v. Thomas, No. 08-300, 2009 WL 2230759 (D.Ore. July 23, 2009); Griffin v. Holt, No. 08-1028, 2008 WL 5348138 (M.D.Pa. Dec. 17, 2008). As the United States Court of Appeals has observed in this regard: "[An inmate] may resort to federal habeas corpus to challenge a decision to exclude him from release to a RRC, Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 243–44 (3d Cir.2005), but the record in his case establishes, just as the District Court concluded, that neither a final decision nor a final recommendation has been made. . . . . [Therefore, this] habeas corpus petition thus is not ripe for judicial review." Porter-Bey v. Bledsoe, 456 F. App'x 109, 111 (3d Cir. 2012).

As in Porter-Bey, in this case a final RRC placement decision has not yet been made. Therefore, as in Porter-Bey, this "habeas corpus petition thus is not ripe for

judicial review." Porter-Bey v. Bledsoe, 456 F. App'x 109, 111 (3d Cir. 2012). See also Stanko v. Obama, 393 F. App'x 849, 851 (3d Cir. 2010)(same).

### B. **This Petition Fails on Its Merits**

While we find that this petition is not yet ripe, even if we accepted the view that this matter was now ripe, given the standard of review which applies to these matters, we would be constrained to conclude that Howard has not carried his burden of establishing that this discretionary decision by the Bureau of Prisons violated any rights guaranteed to him by the Constitution or laws of the United States. Therefore, we recommend that this petition be denied on its merits.

At the outset, it is clear that this petition does not raise any concerns of a Constitutional dimension. Nor can Howard rely upon Constitutional concerns to challenge this RRC placement decision since it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id.

Similarly, it has long been recognized that the mere fact of a prison transfer, standing alone, does not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Thus, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta). In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, such as a Residential Re-entry Center, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5thCir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.1976).

Rather, Howard's sole avenue for substantive relief lies through the Second Chance Act itself. With respect to habeas claims premised on the Act, as we have noted, in April of 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, went into effect. The Act contains several provisions which are designed to aid prisoners in their transition back into society. For example, the Act authorizes the Bureau of

Prisons to place certain inmates in Residential Re-entry Centers for up to one year at the end of their prison terms to aid their readjustment into society. See 18 U.S.C. § 3624(c)(1).[3]

While the Act, promotes policies assisting inmates in reintegration into society, nothing in the Act is mandatory, and the Act does not compel the Bureau of Prisons

---

[3] 18 U.S.C. § 3624(c) provides as follows:

**( c ) Prerelease custody.**–

**(1) In general.**--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

**(2) Home confinement authority.**--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

**(3) Assistance.**--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

**(4) No limitations.**--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621

18 U.S.C. § 3624(c).

to provide particular inmates with a specific community confinement or home detention placement. Quite the contrary, the statutory text makes it clear that prison officials retain their broad discretion in placing, housing, transferring and classifying inmates.

Thus, 18 U.S.C. § 3624(c)(4) clearly states that the Act in no way restricts the broad discretion conferred upon the Bureau of Prisons under 18 U.S.C. § 3621 to make decisions on how best to house inmates, providing that: "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621". Section 3621, in turn, broadly reaffirms the discretion of prison officials in this field to make appropriate prison placement decisions based upon five statutory factors set forth in 18 U.S.C. § 3621(b).[4]

---

[4] 18 U.S.C. § 3621(b) provides:

(b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--

Similarly, while the Second Chance Act amended 42 U.S.C. § 17541 to encourage the Bureau of Prisons to examine early release and social re-integration for certain offenders, the Act expressly reaffirms that decisions relating to which offenders may qualify for the program involve assessments that rest in the sound discretion of the Bureau of Prisons. See 42 U.S.C. §§ 17541(a)(2) and (g)(5).

Indeed, as it relates to inmate community confinement decisions, the Second Chance Act speaks directly to the discretion retained by the Bureau of Prisons in 18 U.S.C. § 3624(c)(1) which provides as follows:

> **( c ) Prerelease custody.**–
> **(1) In general.**--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the

---

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) of title 28 . . . Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

> community. Such conditions *may* include a community correctional facility.

18 U.S.C. § 3624(c)(1)(emphasis added).

The use of the word "may" in § 3624, has led courts to consistently hold that the Act creates no absolute, enforceable legal right to a 12- month RRC placement for any prisoner. See, e.g., O'Hara v. Rios, No. 08-5160, 2009 U.S. Dist. LEXIS 90243 (D. Minn. Sept. 28, 2009); McGee v. Thomas, No. 09-455, 2009 U.S. Dist. LEXIS 62617 (D. Ore. July 22, 2009). Rather, what is required by the Act is a showing that the Bureau of Prisons engaged in an individualized determination of each inmate's RRC placement, using the statutory factors set forth in the law. See,e.g., Miller v. Whitehead, 527 F.3d 752,755-58 (8th Cir. 2008); Wires v. Bledsoe, No. 09-2247, 2010 WL 427769 (M.D.Pa. Feb. 3, 2010)(citing Torres v. Martinez, No. 09-CV-1070 (M.D.Pa. Aug.12, 2009)); Fleischi v. Outlaw, No. 09-79, 2009 U.S.Dist. LEXIS 99306 (E.D. Ark. Oct. 26, 2009); O'Hara v. Rios, No. 08-5160, 2009 U.S. Dist. LEXIS 90243 (D. Minn. Sept. 28, 2009); Holland v. Bureau of Prisons, No. 08-3960, 2009 WL 2872835 (D.S.C. Sept. 2, 2009); Smith v. Sanders, No. 09-3083, 2009 U.S. Dist. LEXIS 82265 (C.D. Cal. July 31, 2009); Yanucci v. Stansberry, No. 08-561, 2009 WL 2421546 (E.D.Va. July 28, 2009); McGee v. Thomas, No. 09-455, 2009 U.S. Dist. LEXIS 62617 (D. Ore. July 22, 2009); Sessel v. Outlaw, No. 08-212, 2009 WL

1850331 (E.D. Ark. June 25, 2009); Stanko v. Rios, No. 08-4991, 2009 WL 1303969 (D. Minn. May 8, 2009); Somerville v. DeWalt, No. 09-68, 2009 U.S.Dist. LEXIS 37454 (E.D. Ky. May 1, 2009); Snyder v. Angelini, No. 07-3073, 2008 U.S. Dist. LEXIS 86460 (E.D.N.Y. Oct. 27, 2008).

This view has been adopted by numerous courts in this district; see, e.g., Ogman v. Ebbert No. 10-1342, 2010 WL 4922889, 3 (M.D.Pa. Nov. 12, 2010); Collins v. Martinez, No. 09-2454, 2010 WL 4272923 (M.D.Pa. October 25, 2010); Berlin v. Bledsoe, 2010 WL 3528571 (M.D.Pa. September 8, 2010) Cullum v. Bledsoe, Civil No. 09-2385, 2010 WL 2521035 (M.D.Pa. Jun.15, 2010); Ramos v. Holt, 2010 WL 2471707 (M.D.Pa. May 5, 2010); McDonald v. Obama, 2010 WL 1526443 (M.D.Pa. March 14, 2010); Wires v. Bledsoe, No. 09-2247, 2010 WL 427769 (M.D.Pa. Feb. 3, 2010), and is reflected in the decisions of the appellate court, which set a deferential standard of review in these cases. As the United States Court of Appeals for the Third Circuit has observed, in this context: "Our review is limited to whether the BOP abused its discretion. See Barden v. Keohane, 921 F.2d 476, 478 (3d Cir.1991). The BOP exercises its authority pursuant to the Second Chance Act to determine individual prisoner RRC placements by applying the five factors set forth in section 3621(b). The sixth factor used by the BOP is participation and/or completion of Skills Development programs pursuant to 42 U.S.C. § 17541." Vasquez

17

v. Strada, 684 F.3d 431, 434 (3d Cir. 2012). Provided that the Bureau of Prisons does not abuse its discretion in assessing these factors, an RRC release decision made by that agency may not be disturbed by a reviewing court. Id.; Wilson v. Strada, 474 F. App'x 46, 48 (3d Cir. 2012).

Adopting this standard of review we believe that the record of these proceedings shows that Howard's request has, to date, received individualized consideration at the prison. For example, on September 18, 2012, the prison Unit Team met and initially reviewed Howard for RRC placement. (Id., Ex. 1 & 8; Attach. 3.) At this initial discussion it was noted that Howard's case presented conflicting factual considerations relating to the most appropriate time for a residential reentry placement for this inmate.

Thus, Howard's criminal history suggested a need for a structured environment for this offender and weighed against early release. Specifically, it was noted that Howard had a history of violence, including terroristic threats; had stabbed a victim in the head; had a lengthy history of substance abuse; and had amassed 32 criminal convictions between May 29, 1980 and April 5, 2006. (Id., Ex. 1 ¶ 9.) At least four of these convictions involved crimes of violence. (Id.) In contrast, while in prison Howard had adjusted well, and had taken several programming classes and maintained

a positive term of incarceration. (Id.; Attach. 4, at 2. ) Balancing the negative and positive aspects of Howard's criminal past and institutional adjustment, prison officials advised Howard during his review that he would more than likely be recommended for 150-180 days of RRC placement. (Id.,Ex. 1 and 10.) There is nothing about the weighing of these countervailing considerations that suggests an abuse of discretion by prison officials. Rather, an assessment of the RRC placement discussions that have taken place to date in this case leads in the firm conviction that this decision represented an individualized assessment of the needs of this prisoner, which is all that the law requires, and all that an inmate can demand.

## IV. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2241, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

> The parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written

objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of June 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge